T.C. Summary Opinion 2008-99


UNITED STATES TAX COURT


TERRY ROGERS AND DIANNE ROGERS, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21238-05S.                 Filed August 12, 2008.


Terry Rogers and Dianne Rogers, pro sese.

<u>Beth A. Nunnink</u>, for respondent.


CARLUZZO, <u>Special Trial Judge</u>: This case was heard
pursuant to the provisions of section 7463.[1] Pursuant to section
7463(b), the decision to be entered is not reviewable by any

_____

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the relevant period. Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be cited as precedent for any other case.

In a notice of deficiency dated September 28, 2005, respondent determined deficiencies in petitioners' income taxes and penalties as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|------------------|
| 2002 | $5,420 | $1,084 |
| 2003 | 5,765 | 1,153 |

The issues for decision for each year are: (1) Whether petitioners are entitled to various trade or business expense deductions in excess of the amounts allowed by respondent; and (2) whether petitioners are liable for a section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. Petitioners are, and were at all times relevant, married to each other. At the time the petition was filed, they resided in Tennessee.

## Petitioners' Employment Situations

Dianne Rogers was employed by David Smallbone Management Co. (Management) during each year in issue. Her employment responsibilities during those years related mostly, if not entirely, to arranging performances and tours and otherwise

promoting the career of Rebecca St. James, a recording artist who was a client of Management.

Dianne Rogers's specific employment duties varied.  As she described them during her trial testimony, she "ran the business".  For example, she scheduled performances, made travel arrangements, processed payments, paid bills, picked up and dropped off mail at the post office, and, from time to time, traveled with the artist during promotional or performance tours.

According to Management, the company had no "official" policy with respect to reimbursing its employees for employment/business-related expenses paid or incurred by the employee.  Nevertheless, for the years in issue, Management described its reimbursement practice as follows:

> Employees of Smallbone Management were only reimbursed for business travel that was directly related to their duties.  Any leisure trips, sanctioned vacation days, etc. were not reimbursed unless approved in advance.

With respect to Dianne Rogers, Management's reimbursement practice was as follows during those years:

> Dianne [Rogers's] * * * duties * * * included both reimbursed and non-reimbursed trips.  She was reimbursed regularly for task oriented duties on a day to day basis like trips to the post office, bank, Fed Ex, etc.  She was not reimbursed for donated time, vacation days taken mixing business and pleasure, etc.

Terry Rogers's employment situation during each year in issue is not so clear.  By profession he was a bus driver.  He had an employment arrangement with Pioneer Coach (Coach).  During

the years in issue Coach considered him to be "contract labor"
who was "paid per trip by the [artist's] company." Coach further
described the company's arrangement with Terry Rogers as follows:

> He is not reimbursed for items he provides for the bus
> including candy, candles, supplies, etc. These are
> items needed to make the bus enjoyable for the artists
> and are the responsibility of the driver. He is also
> not reimbursed for his computer. The laptop is needed
> on the road for driver logs, fuel logs, e[-]mailing to
> the [artist's] management company, directions, maps,
> etc.

As best can be determined from the record, one of the artists
that Terry Rogers regularly provided transportation services for
during the years in issue was Rebecca St. James.

Petitioners' Federal Income Tax Returns

Petitioners filed a timely joint Federal income tax return
for each year in issue. Both returns were prepared by H&R Block.

1. 2002

The 2002 return includes a Schedule A, Itemized Deductions,
and a Schedule C, Profit or Loss From Business. As relevant
here, on the Schedule A petitioners claimed the following
deductions:

| Deduction | Amount |
|---|---|
| Charitable donations | $6,579 |
| Employee business expenses | 8,687 |

The above amount shown for the employee business expense
deduction relates to Dianne Rogers and does not take into account
section 67(a). To some extent, the details of that deduction are

shown on a Form 2106-EZ, Unreimbursed Employee Business Expenses, also included with petitioners' 2002 return.  The Form 2106-EZ shows amounts claimed for "Vehicle expense using the standard mileage rate" ($3,723), "Travel expenses while away from home overnight" ($3,500), "Business expenses" not previously included in other categories ($1,008), and "Meals and entertainment expenses" ($456, after 50-percent reduction pursuant to section 274(n)).

The Schedule C included with petitioners' 2002 return identifies Terry Rogers as the proprietor and indicates that the business income and deductions shown on that schedule are computed in accordance with the cash receipts and disbursements method of accounting.  The Schedule C shows gross receipts and gross income in the same amount, $6,965.  As relevant here, the following deductions are claimed on the Schedule C:

| Deduction | Amount |
| --- | --- |
| Depreciation/sec. 179 | $2,021 |
| Supplies | 3,077 |
| Meal and entertainment (after sec. 274(n) reduction) | 3,796 |
| Utilities | 1,689 |
| Business use of home | 2,096 |

The depreciation/section 179 deduction includes $1,843 identified by petitioners as the cost of a computer.

2. <u>2003</u>

Petitioners' 2003 return includes a Schedule A and two Schedules C.

As relevant here, on the Schedule A petitioners claimed the following deductions:

| Deduction | Amount |
| --- | --- |
| Charitable donations | $6,514 |
| Tax preparation | 263 |
| Employee business expenses | 2,208 |

The above amount shown for the employee business expense deduction relates to Dianne Rogers and does not take into account section 67(a). To some extent, the details of that deduction are shown on a Form 2106-EZ, also included with petitioners' 2003 return. The Form 2106-EZ shows amounts claimed for "Vehicle expense using the standard mileage rate" ($936), "Travel expenses while away from home overnight" ($150), "Business expenses" not previously included in other categories ($324), and "Meals and entertainment expenses" ($798, after 50-percent reduction pursuant to section 274(n)).

One of the Schedules C identifies Dianne Rogers as the proprietor. The business is described as "tour promotions:tour promotionals", and the business income and deductions shown on that schedule are computed in accordance with the cash receipts and disbursements method of accounting. As relevant here, the following deductions are claimed on the Schedule C:

| Deduction | Amount |
|---|---|
| Depreciation/sec. 179 | $   417 |
| Rent or lease | 1,589 |
| Supplies | 1,800 |
| Office expenses | 2,641 |
| Utilities | 2,356 |

The second Schedule C included with petitioners' 2003 return identifies Terry Rogers as the proprietor.  As with 2002, that Schedule C relates to his employment as a bus driver and indicates that the income and deductions attributable to his business are computed in accordance with the cash receipts and disbursements method of accounting.  As relevant here, the following deductions are claimed on the second Schedule C:

| Deduction | Amount |
|---|---|
| Depreciation/sec. 179 | $1,339 |
| Supplies | 1,774 |
| Meals and entertainment (after sec. 274(n) reduction) | 3,363 |
| Business use of home | 5,570 |
| Other expenses | 775 |

The Notice of Deficiency

The notice of deficiency that forms the basis for this case contains no fewer than 26 adjustments relating to the 2 years in issue.  Adjustments that have been agreed to by petitioners or are otherwise in their favor are not discussed.  Similarly, computational adjustments are not addressed in this opinion.

For 2002 respondent disallowed: (1) $2,191 of the charitable contribution deduction; (2) the employee business expense deduction claimed on the Schedule A; and (3) all of the Schedule C deductions shown above.

For 2003 respondent disallowed: (1) $250 of the charitable contribution deduction; (2) the tax preparation fee expense deduction claimed on the Schedule A; (3) the employee business expense deduction claimed on the Schedule A; (4) $1,031 of deduction for "Supplies", $1,572 of the deduction for "Office expense", the entire deduction for "Depreciation/section 179", and the entire deduction for "Rent or lease" claimed on the Schedule C for Dianne Rogers; and (5) all of the deductions listed above claimed on the Schedule C for Terry Rogers.

For each year respondent also imposed a section 6662(a) accuracy-related penalty on several grounds, including "negligence or disregard of rules or regulations" and "substantial understatement of income tax".

## Discussion

There is no dispute that deductions are allowable for the types of expenses that are involved in this case. See secs. 162(a), 170. Nevertheless, as stated and established in opinions too numerous to count, otherwise deductible expenses, such as the ones in dispute in this case, must be substantiated. See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. per

curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs. Furthermore, certain deductions, such as those relating to travel and entertainment expenses, are subject to very strict substantiation requirements. See sec. 274(d).

Taking into account the concessions respondent made at trial, the dispute between the parties focuses on the extent to which petitioners have properly substantiated the expenses that underlie the deductions, or portions of deductions, that remain in dispute. That being so, we briefly discuss the evidence, or the lack of evidence, that informs our findings.

Witness Testimony

Dianne Rogers appeared at trial and testified on petitioners' behalf.[2] She explained how she and her spouse were employed during the years in issue, but her knowledge of the items of income and deductions claimed on petitioners' returns for the years in issue was limited. She began her testimony as follows:

> Well, just a little history that when we went and had our taxes filed, we went to H&R Block. We always used the same auditor. Her name was Carol, and I'm not sure what her last name was. She was an accountant for the State of Tennessee. We went to her every single year for probably seven years, because we felt her being an accountant and knowing -- for the State of Tennessee, and so she handled all of our deductions, where to place them. We took everything to her.

---

[2] Terry Rogers did not appear at trial.

When we received the letter from the IRS saying that we were audited, I went back to H&R Block and gave them the letter, and you know, had them look up everything.  They came back and said they couldn't help me, because I did not take out the Peace of Mind insurance, so that was how I got Lisa Unge, because at that point, I received the letters from the IRS, and then she had to refile everything.

Lisa Unge was called as a witness on petitioners' behalf. Following preliminary points, and after acknowledging that she did not prepare petitioners' return for either year in issue, she began her testimony as follows:  "I prepared the amended return that she's [Dianne Rogers] referring in the stipulation of facts, and all the handwriting on your evidence is mine.  Not all of it, but --".

For what it is worth, we point out that no amended returns have been made part of the record by stipulation or otherwise. Apparently the "amended returns" to which Lisa Unge referred were actually copies of the original returns for the years in issue that contained handwritten strikeouts and substituted numbers for many of the items of income and deductions initially in dispute. Some of the strikeouts and insertions suggest that petitioners agree to adjustments made in the notice of deficiency.  When the Court ask Dianne Rogers whether that, in effect, was the case, she responded:  "I think that's a question you'll have to ask Lisa [Unge]".  Lisa Unge did not know.

Other than Dianne Rogers and Lisa Unge, no witnesses were called to testify on behalf of petitioners.  Neither witness

could explain how the deductions, or portions of the deductions, remaining in dispute were computed.

Documents Introduced Into Evidence

All of the documents introduced into evidence were stipulated. None of the exhibits tie the evidence to the computation of the deductions, or portions of deductions, that remain in dispute. Instead the documents introduced into evidence include, among other things: (1) Copies of hundreds of receipts (some illegible) from numerous vendors and restaurants, arranged in no relevant order that is apparent to the Court; (2) numerous copies of monthly credit card statements, some reported transactions having been obliterated by what might have been highlighting on the original; (3) numerous copies of monthly bank statements; and (4) printed calendars containing handwritten notations.

At trial it became obvious to the Court that it would be difficult, if at all possible, to connect specific exhibits (more accurately specific copies of receipts or transactions shown on an exhibit) with the deductions or portions of deductions that remain in dispute without a schedule showing/explaining how an exhibit or a portion of an exhibit provides substantiation for a related deduction or portion of a deduction. Following the trial, petitioners were directed by order to "submit to the Court a written schedule that shows the computation of each disputed

deduction by reference to specific items or transactions shown in an exhibit". Petitioners submitted a two-page "summary" that complies somewhat with the Court's directive, but only to a limited extent (the summary). Attached to the summary are copies of "corrected" Forms 1040, U.S. Individual Income Tax Return, for the years in issue. Even if properly before the Court, which they are not, it is unclear what conclusions petitioners intended the Court to draw from the "corrected" Forms 1040.

In part, instead of connecting disputed deductions with exhibits, the summary recharacterizes some of the disputed deductions without providing a basis for the recharacterization. Where the summary does reference specific exhibits to disputed deductions, the reference is often to an entire exhibit. Even if it appears or can be determined that an item shown on the exhibit substantiates a deduction, it cannot be determined whether respondent has already taken that item into account in a partial allowance or subsequent concession, or whether petitioners were or could have been reimbursed for the expenditure.

Findings With Respect To Disputed Deductions

After careful review of the evidence we arrive at the following conclusions. The testimony of the witnesses provides no basis for allowing a deduction for any expense in excess of the amount already allowed by respondent. Furthermore, although there might be "needles" of substantiating documents in the

numerous exhibits admitted into evidence in this case, for the most part those needles are effectively obscured by the "haystacks" of exhibits in which they are buried.

That being so, and keenly aware that the generation of business income routinely involves business expenditures, see Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we are unable to find that petitioners are entitled to deductions in excess of the amounts already allowed by respondent with the following possible exception.

For each year in issue Terry Rogers was employed as a bus driver. It appears that the amounts now allowed by respondent for meals expenses for each year might not properly reflect his status as an individual involved in the transportation industry. See sec. 274(n)(3); Rev. Proc. 2003-80, 2003-2 C.B. 1037; Rev. Proc. 2002-63, 2002-2 C.B. 691; Rev. Proc. 2001-47, 2001-2 C.B. 332. If not, the proper amounts should be determined and respondent's allowances adjusted.

Section 6662(a) Accuracy-Related Penalty

For each year in issue respondent determined that petitioners are liable for a section 6662(a) accuracy-related penalty. Various grounds for the imposition of that penalty are set forth in the notice of deficiency. If it is shown that the taxpayer acted in good faith and there is reasonable cause for

the deficiency, then the section 6662(a) accuracy-related penalty is not applicable. Sec. 6664(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

As best can be determined from the record, petitioners relied upon a paid income tax return preparer to compute their Federal income tax liability for each year in issue. Nothing in the record suggests that such reliance was not reasonable. Furthermore, when selected for examination, petitioners returned to their return preparer for assistance, only to be turned away because they did not subscribe to "Peace of Mind" coverage for either year in issue. We are satisfied that petitioners had reasonable cause and acted in good faith with respect to whatever deficiency remains after respondent's concessions for each year in issue are taken into account. They are not liable for the section 6662(a) accuracy-related penalty for either year in issue.

Decision will be entered

under Rule 155.